IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kendra Anderson and Marla Micks, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>   - against -<br><br>The Hain Celestial Group, Inc.,<br><br>      Defendant | 2:21-cv-01621<br><br><br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiffs allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1. The Hain Celestial Group, Inc. ("Defendant") manufactures, distributes, labels and sells baby food products in numerous forms, i.e., pouches, purees, snacks, etc., under its Earth's Best Organic brand, which consist mainly of rice and other ingredients. ("Products").

2. Parents trust manufacturers like Defendant to sell baby food that is safe, nutritious, and free from harmful toxins, contaminants, and chemicals.

3. They expect the food they feed their infants and toddlers to be free from heavy metals, substances known to have significant and dangerous health consequences.

4. However, consumers lack the scientific knowledge necessary to determine whether such products contain heavy metals, relying on Defendant to truthfully disclose whether their products pose a potential risk to children.

5. A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform, reveals that Defendant has violated the trust of this nation's parents.

6. The Subcommittee's investigation was spurred by "reports alleging high levels of

toxic heavy metals in baby foods" and the knowledge that "[e]ven low levels of exposure can cause serious and often irreversible damage to brain development."

7. The report revealed that "[i]nternal company standards permit dangerously high levels of toxic heavy metals, and… that the manufacturers have often sold foods that exceeded these levels."

8. The Food and Drug Administration ("FDA") and the World Health Organization ("WHO") declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[1]

9. These four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as the "permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[2]

10. Even in trace amounts, these heavy metals can alter the developing brain and erode a child's IQ and increase risk of future criminal and antisocial behavior in children.[3]

11. Defendant's front and back labels tout its health attributes through pictures of fresh raspberries, bananas and rice, and the statements, "Earth's Best Organic," "Organic Banana Raspberry & Brown Rice," "Fruit & Grain Puree," "Non-GMO Project Verified" and "USDA Organic."[4]

---

[1] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report ("House Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.
[2] Healthy Babies Bright Futures Report, at 6.
[3] *Id*.
[4] This product is an example of the numerous, similarly labeled products which are believed to contain high levels of heavy metals.



12. The ingredient list gives consumers no cause for concern:

**INGREDIENTS:** ORGANIC BANANA PUREE, WATER, ORGANIC RASPBERRY PUREE, ORGANIC BROWN RICE FLOUR, CITRIC ACID (VITAMIN C).

**INGREDIENTS:** ORGANIC BANANAS, WATER, ORGANIC RASPBERRY, ORGANIC WHOLE GRAIN BROWN RICE FLOUR, CITRIC ACID.

13. However, nowhere in the labeling, advertising, statements, warranties, and/or packaging does Defendant disclose that the Product contains significant, non-trace levels of

3

arsenic, mercury, lead, cadmium, and perchlorate[5] – all known to pose health risks to humans and especially infants.

A. Arsenic

14. When children are exposed to arsenic early in life, it causes "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[6]

15. Arsenic exposure also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system."[7]

16. The FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic and is also considering limiting the action level or arsenic in rice cereal for infants to 100 ppb.[8]

17. The FDA has set 100 ppb inorganic arsenic as the limit in infant rice cereal, though Defendant's internal standard is 15% higher than the FDA limit, at 115 ppb.

18. Defendant sold baby food products with as much as 129 ppb inorganic arsenic.

19. Documents show that Hain used ingredients testing as high as 309 ppb arsenic.

20. In all baby food products tested by Defendant, inorganic arsenic levels were higher than estimated based on individual ingredient testing.

21. Inorganic arsenic was between 28% and 93% more in the finished products than it

---

[5] Healthy Babies Bright Future, What's In My Baby's Food?, What's In My Baby's Food?, (January 10, 2021).
[6] *Id*.
[7] House Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013) (online at https://pubmed.ncbi.nlm.nih.gov/23570911/)).
[8] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr.2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM493152.pdf.

4

was in the ingredients.

22. Half of Defendant's brown rice baby foods had over 100 ppb inorganic arsenic; and the average brown rice baby food had 97.62 ppb inorganic arsenic.

B. Lead

23. Lead exposure can seriously harm children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed development, and reduced postnatal growth."[9]

24. Young children are particularly vulnerable to lead because the physical and behavioral effects of lead occur at lower exposure levels in children than in adults.

25. In children, low levels of lead exposure have been linked to damage to the central and peripheral nervous system, learning disabilities, shorter stature, impaired hearing, and impaired formation and function of blood cells.[10]

26. EPA has set the maximum contaminant level goal for lead in drinking water at zero because lead is toxic metal that can be harmful to human health even at low exposure levels.

27. Lead can bioaccumulate in the body over time, leading to the development of chronic poisoning, cancer, developmental, and reproductive disorders, as well as serious injuries to the nervous system, and other organs and body systems.[11]

28. The Agency for Toxic Substances and Disease Registry states that there may be no threshold for lead with regards to developmental impact on children.

29. Defendant used ingredients with up to 352 ppb lead.

30. Defendant's ingredients had high lead content.

---

[9] House Report, at 11.
[10] See https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.
[11] *See* https://www.epa.gov/ground-water-and-drinking-water/basic-information-about-lead-drinkingwater.

31. 88 products were determined to have more than 20 ppb lead while six had greater than 200 ppb lead.

C. <u>Mercury</u>

32. Mercury increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed in utero.

33. Mercury has been linked to higher risk of lower IQ scores and intellectual disability.

34. The FDA has set a maximum mercury level in drinking water to 2 ppb.

35. Defendant does not even test for mercury.

D. <u>Cadmium</u>

36. Cadmium is linked to neurotoxicity, anemia, liver disease, cancer, and kidney, bone, and heart damage.

37. Health and environmental regulatory bodies have set maximum cadmium levels in drinking water to 3 and 5 ppb.

38. Defendant used 102 ingredients in its baby foods that tested over 20 ppb cadmium. Some tested much higher, up to 260 ppb cadmium.

II. Defendant's Standards Permit Dangerously High Levels of Toxic Heavy Metals

39. Defendant's internal company standards permit dangerously high levels of toxic heavy metals.

40. Though Defendant conducts some testing for these substances, the products are sold to consumers regardless of the level of heavy metals they contain.

41. Defendant's internal standard for arsenic, lead, and cadmium in some of its ingredients is 200 ppb, higher than is considered safe for small children.

42. However, Defendant failed to abide by its internal policies, and used ingredients containing 353 ppb lead and 309 ppb arsenic.

43. Defendant rationalized the high level of heavy metals in its products as "theoretical calculations," even though it knew – since at least August 2019 – that it underestimated final product toxic heavy metal levels.

44. It is believed that Defendant is also adding ingredients with already high levels of toxic heavy metals, like vitamin/mineral pre-mix.

45. Defendant only tested its ingredients, not finished products.

46. Defendant knows that its customers trust the quality of its products and that they expect Defendant's products to be free of heavy metals.

47. It also knows that all consumers seek out and wish to purchase baby foods that will not cause harm or risk of harm, and that assurances of quality induces purchasers to pay more than they otherwise would.

48. No reasonable consumer seeing Defendant's marketing would expect the contaminated baby foods to contain heavy metals or other undesirable toxins or contaminants.

49. Reasonable consumers, like Plaintiffs, would consider heavy metals at non-trace levels a material fact when considering what baby food to purchase.

50. Defendant knows consumers value assurances the products they buy do not contain certain ingredients and/or components.

Defendant's marketing tells consumers the positive attributes of its Products:

- At Earth's Best Organic brand, we take great care in every step of the baby food process to bring you THE BEST FROM THE EARTH;

- Made with wholesome ingredients from our family of certified organic farmers;

- Certified USDA Organic products;

- Excellent source of vitamin C;

- Kosher.

51. Defendant also assures consumers its Products it will not contain other ingredients and/or components:

- No GMO ingredients

- No artificial flavors, colors or preservatives

- Non-BPA packaging

- No wheat and no added salt or sugar

- No artificial flavors, colors, preservatives, growth hormones, antibiotics, steroids or potentially harmful pesticides or herbicides

52. Since Defendant knows consumers dislike the items listed, it is expected they also know consumers will dislike heavy metals at non-trace levels in the Products, which have harmful effects on children.

53. Defendant misrepresented the Products through affirmative statements, half-truths, and omissions.

54. Defendant sold more of the Products and at a higher price than it would have in absence of this misconduct, resulting in additional profits at the expense of consumers.

55. Had Plaintiffs and the proposed class members known the truth, they would not have bought the Products or would have paid less for it.

56. As a result of the false and misleading representations, the Products are sold at a premium price, approximately no less than no less than $1.49 for pouches of 4.2 OZ, excluding

tax, compared to other similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

57. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

58. Under CAFA, district courts have original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity.

59. Plaintiff Kendra Anderson is a citizen of Colorado.

60. Plaintiff Marla Micks is a citizen of Illinois.

61. Defendant The Hain Celestial Group, Inc. is a Delaware corporation with a principal place of business in Lake Success, Nassau County, New York.

62. Diversity exists because Plaintiffs and Defendant are citizens of different states.

63. Upon information and belief, sales of the Products and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

64. This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

65. Venue is further supported because many class members reside in this District.

66. A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

67. Plaintiff Kendra Anderson is a citizen of Aurora, Arapahoe County, Colorado.

68. Plaintiff Marla Micks is a citizen of Orland Park, Cook County, Illinois.

69. Defendant The Hain Celestial Group, Inc. is a Delaware corporation with a principal place of business in Lake Success, New York, Nassau County.

70. Defendant's Earth's Best Organic is a leading baby food brand.

71. The use of the word "Organic" in the brand name is a representation a product will not contain pesticides and GMOs.

72. Though "Earth's Best" may be puffery, it still is understood as giving assurances to consumers its Products will not contain dangerous levels of heavy metals.

73. It is reasonable for consumers to also expect organic to mean a product will not contain dangerously high levels of heavy metals.

74. The Products are sold to consumers from retail and online stores of third-parties across the country.

75. Plaintiff Anderson bought the Earth's Best Organic Banana Raspberry & Brown Rice Pouch on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, such as Walmart, 13420 W Coal Mine Ave, Littleton, CO 80127, numerous times, including within the last week, for the consumption of children.

76. Plaintiff Micks bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, from one or more locations, such as Target, 15850 S 94th Ave Orland Park, IL 60462 and Meijer, South Suburbs, 15701 71st Ct, Orland Park, IL 60462, consistently over the past six months, among other times, for the consumption of children.

77. Plaintiffss bought the Products at or exceeding the above-referenced price because

10

they wanted to buy a product with the qualities and attributes represented herein and relied upon what the label indicated and omitted.

78. Plaintiffs would not have purchased the Products in the absence of Defendant's misrepresentations and omissions.

79. The Products were worth less than what Plaintiffs paid and they would not have paid as much absent Defendant's false and misleading statements and omissions.

80. Plaintiffs intend to, seek to, and will purchase the Products again when they can do so with the assurance that Products' labeling are consistent with its composition.

## Class Allegations

81. The class will consist of all purchasers of the Products who reside in Colorado and Illinois during the applicable statutes of limitations.

82. Plaintiffs seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

83. Common questions of law or fact predominate and include whether Defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

84. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

85. Plaintiffs are adequate representatives because their interests do not conflict with other members.

86. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

87. Individual actions would risk inconsistent results, be repetitive and are impractical

to justify, as the claims are modest relative to the scope of the harm.

88. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

89. Plaintiffs seek class-wide injunctive relief because the practices continue.

Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 et seq.
(Consumer Protection Statutes)

90. Plaintiffs incorporate by reference all preceding paragraphs.

91. Plaintiffss and class members desired to purchase products without high levels of toxic heavy metals.

92. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

93. Defendant misrepresented the Products through its statements, omissions, ambiguities, half-truths and/or actions.

94. Defendant intended that Plaintiffs and the Class rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

95. Defendant knew or should have known that its representations and omissions about the Products' contents were material and likely to mislead consumers.

96. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.
(Consumer Protection Statutes)

97. Plaintiffs incorporate by reference all preceding paragraphs.

98. Plaintiffs and class members desired to purchase products without high levels of toxic heavy metals.

99. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

100. Defendant misrepresented the Product through its statements, omissions, ambiguities, half-truths and/or actions.

101. Defendant intended that Plaintiffs and the Class rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

102. Defendant knew or should have known that its representations and omissions about the Products' contents were material and likely to mislead consumers.

103. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

104. Plaintiffs incorporate by reference all preceding paragraphs.

105. The Products were manufactured, labeled and sold by Defendant and warranted to Plaintiffs and class members that it possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and health-related attributes which it did not.

106. The absence of toxic heavy metals was impliedly warranted because of the numerous health-related statements.

107. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

108. This duty is based on Defendant's outsized role in the market for this type of Product.

109. Plaintiffs provided or will provide notice to Defendant, its agents, representatives, retailers and their employees.

110. Defendant received notice and should have been aware of these misrepresentations

due to numerous complaints by consumers to its main office over the past several years regarding the Products.

111. The Products did not conform to its affirmations of fact and promises due to Defendant's actions and were not merchantable.

112. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

113. Plaintiffs incorporate by reference all preceding paragraphs.

114. Defendant had a duty to truthfully represent the Products, which it breached.

115. This duty is based on Defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

116. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a well-known and respected brand or entity in this sector.

117. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

118. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Fraud

119. Plaintiffs incorporate by reference all preceding paragraphs.

120. Defendant misrepresented and/or omitted the attributes and qualities of the Products.

121. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

122. Defendant was aware of these issues for almost two years yet failed to inform consumers.

123. Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

124. Plaintiffs incorporate by reference all preceding paragraphs.

125. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   March 26, 2021

                                           Respectfully submitted,

                                           Sheehan & Associates, P.C.
                                           /s/Spencer Sheehan
                                           Spencer Sheehan
                                           60 Cutter Mill Rd Ste 409
                                           Great Neck NY 11021-3104
                                           Tel: (516) 268-7080
                                           Fax: (516) 234-7800
                                           spencer@spencersheehan.com

2:21-cv-01621
United States District Court
Eastern District of New York

Kendra Anderson, and Marla Micks, individually and on behalf of all others similarly situated,

                            Plaintiffs,

    - against -

The Hain Celestial Group, Inc.,

                            Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
60 Cutter Mill Rd Ste 409
 Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Dated: March 26, 2021

                                                                        /s/ Spencer Sheehan
                                                                           Spencer Sheehan